UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTHONY LEON COLLIER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 2:14-cv-0365-JMS-MJD |
| ) | |
| WARDEN J. F. CARAWAY, et al., ) | |
| ) | |
| Defendants. ) | |

### Entry Discussing Defendants' Third Motion For Summary Judgment and Directing Further Proceedings

Plaintiff Anthony Leon Collier ("Mr. Collier"), is a former federal inmate formerly confined at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"). After screening the amended complaint and dismissing some claims, the Court determined that Mr. Collier's claims of deliberate indifference to a serious medical need and retaliation would proceed against the following defendants: 1) Warden Caraway; 2) Warden L. LaRiva; 3) Dr. T. Bailey; 4) PA Daugherty; 5) C. Desmith; and 6) Hollie Bowman (the "Defendants"). Although Mr. Collier's amended complaint was filed *pro se,* he is now represented by counsel.

The Defendants have filed a third motion for summary judgment arguing that Mr. Collier's claims are barred because he failed to exhaust his available administrative remedies. Mr. Collier has opposed the motion for summary judgment and the Defendants have replied.

For the reasons explained in this Entry, the Defendants' third motion for summary judgment [dkt. 54] is **granted in part and denied in part.** Mr. Collier's motion in opposition requesting that the Court deny the defendants' motion for summary judgment [dkt. 66] is also **denied in part and granted in part.**

## I.  Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a). *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The Court must consider the issue of exhaustion before reaching the merits. *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 536 (7th Cir. 1999) ("The statute [requiring administrative exhaustion] can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit."). Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp,* 458 F.3d 678, 681 (7th Cir. 2006).

## II. Discussion

### A. Exhaustion Requirement Applies

The Court acknowledges that in its Entry of January 20, 2016 (docket 53) before the parties briefed the issue, it ruled that the exhaustion requirement did not apply to this case because Mr. Collier had been released from prison before he filed his amended complaint. Although as cited in that Entry and noted by the parties there is conflicting authority on the subject, the Court now finds that for purposes of this case, the exhaustion requirement does apply to Mr. Collier. Mr. Collier was no longer a prisoner at the time he filed his amended complaint, but he was a prisoner at the time he brought, *i.e.,* initiated, the action. The case law cited by the Defendants is persuasive on that point.

### B. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Collier as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

The Bureau of Prisons ("BOP") has promulgated an administrative remedy system which is codified in 28 C.F.R. § 542.10, *et seq.*, and BOP Program Statement 1330.18, Administrative Remedy Program. The Administrative Remedy process is a method by which an inmate may seek formal review of a complaint related to any aspect of his imprisonment. 28 C.F.R. § 542.10. To exhaust his remedies, an inmate must first file an informal remedy request through an

appropriate institution staff member via a BP-8, prior to filing a formal administrative remedy request with the Warden, Regional Director, and General Counsel.

If the inmate is not satisfied with the response to his informal remedy (BP-8), he is required to first address his complaint with the Warden via a BP-9. 28 U.S.C. § 542.14. The Warden shall respond within 20 calendar days. 28 C.F.R. § 542.18. If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director via a BP-10 within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15. The Regional Director shall respond within 30 calendar days. 28 C.F.R. § 542.18. If the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the General Counsel via a BP-11 within 30 calendar days of the date the Regional Director signed the response. *Id.* The General Counsel shall respond within 40 calendar days. 28 C.F.R. § 542.18.

All codified BOP Program Statements are available for inmate access via the institution law library. Additionally, Administrative Remedy filing procedures are outlined in an Inmate Information Handbook, which is provided to all inmates upon initial intake at FCI Terre Haute.

Mr. Collier was incarcerated at FCI Terre Haute from August 8, 2007, through December 2, 2014. During his incarceration at FCI Terre Haute, Mr. Collier filed two requests for administrative remedy – Remedy 789214 and Remedy 799561.

Remedy 789214 sought a visit with an optometrist or an ophthalmologist because treatment for a lesion on his left eye was delayed for two months. Dkt. 48-1. Mr. Collier submitted the BP-8 for informal resolution on July 28, 2014. *Id.* No informal resolution was reached so Mr. Collier submitted a BP-9 on August 1, 2014, and it was received by the Warden on August 6, 2014. Dkt. 48-2; dkt. 54-6.

On August 27, 2014, Remedy 789214 was denied by the Warden with an explanation that the outside ophthalmologist cancelled the appointment and another appointment had been scheduled in the near future. Dkt. 48-2. Pursuant to 28 C.F.R. § 542.15, Mr. Collier had 20 days to appeal the Warden's decision to the Regional Office via a BP-10. Mr. Collier's BP-10 was thus due in the Regional Office on September 16, 2014. Mr. Collier handed his BP-10 to prison officials on September 12, 2014. Dkt. 47. Mr. Collier's BP-10 was not received until September 18, 2014. That same day, the Regional Office rejected Mr. Collier's grievance as untimely. Dkt. 54-5, p. 2. Mr. Collier received that response on September 26, 2014. Dkt. 48-4; dkt. 47.

Mr. Collier filed a BP-11 on October 7, 2014, with the Central Office. Dkt. 48-4. This was 11 days after he received the BP-10 denial. In his BP-11, Mr. Collier argued that the "prisoner mailbox rule" should apply because he had no way to assure that his remedy was timely filed once it left his hands. He also discussed the merits of his grievance. *Id.* On October 16, 2014, the Central Office received and denied the BP-11, concurring with the Regional Office's rejection of Mr. Collier's BP-10 as untimely. Dkt. 54-5, p. 3. The Central Office instructed Collier to "obtain a staff memo stating the reason for your untimeliness and resubmit your appeal to region." *Id.*

Approximately two weeks after he submitted the BP-11, having not yet received a response to his BP-11, Mr. Collier talked to his counselor, Michael Miller, who could find no record of the BP-11 having been received by Central Office. Dkt. 47. Counselor Miller told Mr. Collier to file a second remedy, which Mr. Collier did on October 15, 2014. *Id.* Remedy 799561 alleged vision loss due to a delay in medical treatment and reported that Mr. Collier had been without contacts for 10 months and needed a refitting. He also requested an appointment with a cornea specialist. Dkt. 48-5. Remedy 799561 was not resolved informally. On October 22, 2014,

Mr. Collier submitted a BP-9 with the Warden. Dkt. 48-6, pp, 2-3. It was received on October 29, 2014. Dkt. 48-6, p. 4. On November 17, 2014, the Warden denied Remedy 799561 stating that Mr. Collier was "scheduled to see the eye specialist for contact fittings." Dkt. 48-6, p. 4; dkt. 54-8. Mr. Collier timely filed his BP-10 appeal with the Regional Office on November 19, 2014. Dkt. 48-7; dkt. 54-9. The BP-10 was received on November 24, 2014. Dkt. 54-10. The Regional Office responded on December 1, 2014, and closed the grievance with an explanation that "you are pending a consultation with a Cornea specialist." *Id.* Mr. Collier never received this response because he was released from prison the next day.

On December 22, 2014, Mr. Collier's mother mailed a BP-11 to the General Counselor's Office at 320 First Street N.W., Washington, D.C., 20534. The Defendants have no record of the receipt of the BP-11.

Neither Remedy alleged any facts or claim that the Defendants retaliated against Mr. Collier.

**C. Analysis**

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from

exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). "The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action." *Turley v. Rednour,* 729 F.3d 645, 649 (7th Cir. 2013) (internal quotation omitted).

   *1. Retaliation Claims*

There is no evidence showing that Mr. Collier submitted any grievance that put the Defendants on notice of any claim of retaliation. Accordingly, the Defendants' motion for summary judgment is **granted** to the extent that Mr. Collier failed to exhaust his retaliation claims. Those claims are dismissed without prejudice.

   *2. Remedy 789214*

The Defendants argue that Mr. Collier did not complete the grievance process with respect to Remedy 789214 because his BP-10 was received two days after the deadline. Mr. Collier argues that the prison mailbox rule should apply and render his BP-10 timely filed.

The Defendants respond that Mr. Collier never made the mailbox rule argument during the grievance process, but the record shows otherwise. *See* Dkt. 48-4. The Defendants further contend that applicable federal regulations eliminate the "mailbox rule" by providing an actual receipt standard, *i.e.,* "a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." *See* 28 C.F.R. § 542.18. The Court acknowledges that some courts have concluded that the "prison mailbox rule" does not apply to federal prisoners' grievances, however, the Defendants have cited no controlling Seventh Circuit authority on this issue. "We need not decide here whether there is any kind of paper, or any circumstance, under which a district court would be entitled to hold a *pro se* prisoner litigant to an actual receipt standard, but we are confident that this would be an exceptional situation." *Edwards v United States*, 266 F.3d 756, 758 (7th Cir. 2001).

The Court is mindful of the reason the "prison mailbox rule" was created. "The [prison mailbox] rule is justified because 'the *pro se* prisoner has no choice but to entrust the forwarding of his [filing] to prison authorities whom he cannot control or supervise and who may have every incentive to delay.'" *Taylor v. Brown,* 787 F.3d 851, 858 (7th Cir. 2015) (quoting *Houston v. Lack,* 487 U.S. 266, 271 (1988)). In *Taylor,* the Court considered whether the mailbox rule applied to documents that prison staff e-filed rather than sent through the prison mailroom. Because "*pro se* prisoners are no more able to guarantee that properly tendered documents are e-filed than that they're mailed," the Court concluded that "a *pro se* prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded." *Id.* at 859.

The facts of this case exemplify why the prison mailbox rule was created and why it should apply here. It is undisputed that on August 1, 2014, Mr. Collier submitted his BP-9 for Remedy 789214, but it was not received by the Warden until August 6, 2014, five (5) days later. The 20 day time frame to file a BP-10 begins on "the date the Warden signed the response." 28 C.F.R. § 542.15. The Warden signed the denial on August 27, 2014. Mr. Collier placed his BP-10 in the prison mail system on September 12, 2014, but it was not received until September 18, 2014, two days late. The delivery took six (6) days. His BP-11 was submitted on October 7, 2014, but not received until October 16, 2014, nine (9) days later.

In his BP-11, Mr. Collier explained that he had placed the BP-10 in the prison mail on September 12, 2014, four days before the deadline. There is nothing more that Mr. Collier could have done to ensure the timely delivery of his BP-10. As noted, it took his grievance six days to get from him to its destination, which far exceeds any normal expectation for delivery time.

The Seventh Circuit has distinguished forfeiture from unavailability. "[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the administrative process detailed in the Code of Federal Regulations, the process that exists on paper becomes unavailable in reality." *Kaba,* 458 F.3d at 684; *see also Dole,* 438 F.3d at 811 (Seventh Circuit focused on whether it was the prisoner's conduct or prison officials' conduct that was responsible for any deficiency in completing the grievance procedure). The delay in delivery was not caused by Mr. Collier. With respect to Remedy 789214, by submitting his BP-10 four (4) days before the deadline, Mr. Collier did not forfeit the process. Rather, he fully complied with the grievance requirements to the extent they were within his control.

Whether the Court concludes that the prison mailbox rule applies or whether it finds that the process was not available to Mr. Collier because the time frame was severely restricted by the amount of time that it took to deliver the BP-10, the outcome is the same. Mr. Collier's BP-10 arrived late through no fault of his own. Mr. Collier, as a prisoner, could not place his paperwork directly in the hands of the intended recipient or postal service. *See Houston,* 487 U.S. at 271 ("No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time."). The Defendants' argument that courts have found grievance processes unavailable "only in the most extreme situations" is not persuasive. Reply, dkt. 68, p. 7. *See Pyles v. Nwaobasi,* No. 14-3289, 2016 WL 3924376 (7th Cir. July 21, 2016) (reversing district court after a *Pavey* hearing, finding that inmate had used due diligence and "failed to file his grievance in time through no fault of his own" (he wanted to get it photocopied and it took law library 9 days to do so), and therefore

defendants did not meet their burden); *Turley,* 729 F.3d at 650, n. 3 (citing cases that found exhaustion was complete when prisoner followed procedure but received no response from prison, making process unavailable); *Dole,* 438 F.3d at 809 (cited above); *Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir. 2005) ("administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable'") (internal quotation omitted); *Lewis v. Washington,* 300 F.3d 829 (7th Cir. 2002) (same); *Middleton v. Dr. Dobyns,* 1:15-cv-0067-JMS-DML, dkt. 55 (S.D.Ind. Nov. 13, 2015) (process was not available when inmate filed informal and formal grievances but the IDOC had no record of them because the medical concerns were treated as non-grievable issues); *Wallace v. Hanratty,* 3:08-cv-350-RV/AK, 2010 WL 680342, *2 (N.D.Fla. Feb. 18, 2010) (listing six circuits having held that "a facility's failure to comply with its own procedures (such as failing to timely respond to a grievance) can excuse what would otherwise be a failure to exhaust … because an inmate is required to exhaust only those remedies 'available to him").

The Defendants have not satisfied their burden with respect to Remedy 789214. The affirmative defense of failure to exhaust as it relates to Mr. Collier's first grievance is **rejected**.

   *3. Remedy 799561*

With respect to Remedy 799561, the parties agree that Mr. Collier completed the informal step and timely filed a BP-8, BP-9, and BP-10.  The BP-10 was submitted on November 19, 2014, and received by the Regional Office on November 24, 2014. The Regional Office responded to Mr. Collier on December 1, 2014, and closed the grievance, noting that "you are pending a consultation with a Cornea specialist." Mr. Collier was released from prison on December 2, 2014, and never received the Regional Office response. Nonetheless, Mr. Collier

submitted a BP-11 to the Central Office. The BOP, however, has no record of receiving Mr. Collier's BP-11.

The Defendants contend that Mr. Collier did not complete the grievance process. They argue that Mr. Collier has no proof that the BP-11 was mailed. The Court disagrees. Mr. Collier responded to the motion for summary judgment with a declaration signed by his mother, Lillie Ruth Collier, under penalty of perjury setting forth specific facts based on personal knowledge. Such an affidavit constitutes competent, admissible evidence. Ms. Collier's declaration states that she placed the BP-11 in the mail on December 22, 2014, addressed to the General Counselor's Office, 320 First Street N.W., Washington, DC, 20534.

The Defendants have not presented evidence disputing the fact that Ms. Collier mailed the BP-11 in the manner she describes. Mr. Collier is not obligated to prove that the BP-11 was received. The facts construed in a manner most favorable to Mr. Collier as the non-movant show that he did comply with all of the steps of the grievance process. That evidence is not going to change. Therefore, there is no reason to set this matter for a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

The Defendants have not met their burden of showing that Mr. Collier failed to exhaust his available administrative remedies with respect to Remedy 799561. The affirmative defense of failure to exhaust as it relates to Mr. Collier's second grievance is **rejected.**

### III. Conclusion

For the reasons discussed above, the Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies [dkt. 54] is **denied in part and granted in part.** Mr. Collier's motion in opposition requesting that the Court deny the Defendants' motion for summary judgment [dkt. 66] is **denied in part and granted in part.**

Accordingly, Mr. Collier's retaliation claim is dismissed without prejudice. Mr. Collier's Eighth Amendment claims of deliberate indifference to his serious medical needs shall proceed on the merits.

The Magistrate Judge is requested to set this matter for a status conference to establish a pretrial schedule for the development and resolution of Mr. Collier's claims of deliberate indifference. The Magistrate Judge is also requested to set a settlement conference in this action.

**IT IS SO ORDERED.**

Date:  July 27, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel

Magistrate Judge Mark J. Dinsmore